IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: \* | |
| DONALD LINWOOD DEMEZA, \* | CHAPTER 13 |
| Debtor \* | |
| \* | CASE NO. 1:16-bk-02789-MDF |
| RICHARD JAY HACKERMAN, \* | |
| Movant \* | |
| \* | |
| v. \* | |
| \* | |
| DONALD LINWOOD DEMEZA, \* | |
| Respondent. \* | |

**OPINION**

Before the Court is Richard Hackerman ("Hackerman")'s Motion to convert the Chapter 13 case of Donald Demeza ("Debtor") to Chapter 7 (the "Motion"), and Debtor's Answer thereto as well as the record and exhibits from the hearing conducted on December 6, 2016. For the reasons set forth below, the Motion will be denied.

**I. Procedural History**

Debtor filed a Chapter 13 petition and plan on July 5, 2016. The Chapter 13 Trustee filed an objection to the plan and subsequently withdrew it on November 15, 2016. Hackerman also objected to Debtor's plan alleging that it was filed in bad faith. On September 4, 2016, Hackerman filed the Motion alleging that Debtor's bankruptcy petition itself was filed in bad faith and requested that the case be converted to Chapter 7. Debtor filed the Answer on September 16, 2016. An evidentiary hearing was held on December 6, 2016. The parties have submitted briefs, and the matter is ready for decision.[1]

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Rule 9014.

## II. Facts[2]

Debtor resides at 500 Orrtanna Road, Orrtanna, Adams County, PA (the "Property"). Debtor works as a horse trainer. In 2012 Debtor, through his company Toledo Racing Stables, LLC., agreed to board Hackerman's pregnant mare.[3] After sustaining injuries during the foaling process, the broodmare and foal had to be put down while in Debtor's care. On December 12, 2012, Hackerman's attorney sent a demand letter to Debtor notifying him that Hackerman intended to file a lawsuit against Debtor related to the deaths of the mare and foal.

On November 26, 2013 Hackerman sued Debtor for gross negligence in the District Court for the Middle District of Pennsylvania. The suit was pending in the District Court when Debtor filed his bankruptcy petition. On June 15, 2016, Hackerman filed a second suit in District Court, this time asserting a fraudulent conveyance action against Debtor and his daughter. Debtor filed his bankruptcy petition shortly thereafter on July 5, 2016. Debtor first discussed the possibility of filing for bankruptcy with his attorney in April or May, 2016.

In his schedules, Debtor listed the Property as a single family home. The parties agreed that the Property is more properly characterized as a farmette. The Property was titled in Debtor's name alone when it was acquired, but it was transferred into joint names with his daughter shortly before Debtor took out a loan secured by the Property on February 5, 2013.

---

[2] There have been many averments that relate to Debtor's handling of Hackerman's broodmare and foal. However, in front of me is the issue of whether Debtor has filed his Chapter 13 case in good faith and has filed his plan in good faith. Therefore, I will focus on the facts that relate to that issue.

[3] In his brief, Debtor has included an excerpt from a "boarding agreement," however, such agreement was not authenticated and introduced at the evidentiary hearing on the Motion and has not been admitted into evidence. Therefore, the Court will disregard its alleged contents and any arguments related thereto.

2

When he applied for the loan, Debtor had inadequate income to qualify. So in order to obtain financing, it was necessary to include Debtor's daughter as a joint obligor on the note and mortgage. To secure the loan, her name had to be added to the deed. The proceeds of the loan were used to pay various debts totaling $31,000, including credit card debt and a student loan of approximately $22,500. Debtor testified that in addition to the credit card and student loan payments, he used the funds to cover expenses related to maintaining several horses he owns and for legal and other personal expenses. Debtor also testified that $3000 was disbursed to pay down his daughter's credit card.

Debtor's schedules indicate that the value of the Property is $160,000 and that Debtor's equity interest is $80,000. U.S. Bank National Association has filed a proof of claim in the secured amount of $117,979.27 with an arrearage amount of $321.21. As of the date of the hearing, the cash payout Debtor received from the mortgage transaction had been depleted. Debtor's daughter does not live on the Property, and Debtor makes all the mortgage payments.

Other than his interest in the farmette, Debtor's only other significant assets are his interest in Toledo Racing Stables, LLC, valued at $4400, a 25% interest in FDO Holdings, LLC, valued at $57,000, two thoroughbred horses having a value of $2000, and two thoroughbred horses owned jointly with another party having a value of $1500.

Debtor's income from Schedule I is listed as $2132.33 per month. Debtor testified that his father lives on the Property and pays rent in an amount between $300 and $400 per month. He also has a roommate who pays approximately $400 per month in rent. When Debtor filed his petition, his monthly mortgage payments were $877, including the escrow for taxes and insurance.

3

Case 1:16-bk-02789-RNO    Doc 90    Filed 02/21/17    Entered 02/21/17 11:02:23    Desc
Main Document    Page 3 of 11

Debtor's schedules show that he owes a total of $417,305 to secured creditors, including a judgment that was entered in Franklin County in the amount of $241,103.[4] Debtor owes $5547.70 to priority unsecured creditors and $49,784.23 to non-priority unsecured creditors. Debtor's schedules list Debtor and his daughter as joint obligors on a student loan, however, the student loan statement designates Debtor as the sole obligor.

At the hearing date, Debtor had made all payments required under the proposed Chapter 13 plan and was current on all mortgage payments.

### III. Discussion

Hackerman argues that Debtor's case should be converted to one under Chapter 7 because creditors will receive a larger payout under Chapter 7 than under Chapter 13. He also argues that by paying the entire mortgage payment when his daughter has a one-half interest in the Property, Debtor is benefitting his daughter to the detriment of his creditors. Hackerman also alleges that Debtor has not been candid with the Court. He further argues that Debtor should not be in a Chapter 13 case because he does not have regular income.

Some of Hackerman's arguments relate to whether Debtor's Chapter 13 petition was filed in good faith, others relate to whether the proposed plan was filed in good faith. A debtor must file a Chapter 13 petition in good faith, *In re Myers*, 491 F.3d 120, 125 (3d. Cir. 2007), and a Chapter 13 plan cannot be confirmed unless it has been proposed in good faith, 11 U.S.C. § 1325(a)(3). Additionally, a Chapter 13 plan cannot be confirmed unless the petition was filed in good faith. 11 U.S.C. § 1325(a)(7). Courts apply the same standards when analyzing good

---

[4] No evidence was provided that the Franklin County judgment had been transferred to Adams County such that it would constitute a lien on the Property. Debtor personally guaranteed the debt of FDO Holdings, LLC.

4

faith when considering grounds for dismissal or conversion of a case under § 1307(c) and when evaluating a plan under the § 1325 confirmation requirements. The only distinction between the two sections of the Code is that the objecting creditor has the initial burden to demonstrate bad faith under § 1307(c), while the debtor bears the burden of showing good faith under the confirmation standards of § 1325. *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (1st Cir. B.A.P. 2005). Accordingly, both the request for conversion of the case and the objection to the plan will be analyzed together keeping the respective burdens of the parties in mind.

On request of a party in interest, a Chapter 13 bankruptcy case may be converted to a case under Chapter 7 of the Bankruptcy Code or dismissed "for cause." 11 U.S.C. § 1307(c). "'A Bankruptcy Court has considerable discretion in determining whether 'cause' exists . . . .'" *In re Monteleone,* 553 B.R. 288, 293 (Bankr. W.D. Pa. 2016) (citing *in re Orawsky,* 387 B.R. 128, 137 (Bankr. E.D. Pa. 2008)); *In re Soppick,* 516 B.R. 733, 745 (Bankr. E.D. Pa. 2014).

Although the Bankruptcy Code does not explicitly require that a Chapter 13 petition be filed in good faith, the Court of Appeals for the Third Circuit recognizes the absence of good faith or presence of bad faith as grounds for dismissal. *Myers*, 491 F.3d at 125. However, "good faith is a term incapable of precise definition. [T]he good faith inquiry is a fact intensive determination . . . [which] . . . must be assessed on a case-by-case basis in light of the totality of the circumstances." *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996). A bankruptcy court must assess a debtor's good faith based on the facts of each case, "considering the 'honest intention' of the debtor and 'whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law.'" *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007) (quoting *Frank v. Tamecki (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000)). Dismissal or conversion

5

should be reserved for "'those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.'" *Id.* (quoting *In re Zick,* 931 F.2d 1124, 1129 (6th Cir. 1991)); *cf. Perlin* at 497 F.3d at 375 (holding that debtors with substantial income who filed bankruptcy after creditor requested default judgment against them did not display bad faith); *In re Dahlgren*, 418 B.R. 852, 856-57 (Bankr. D.N.J. 2009) (holding that debtor filing bankruptcy on eve of sale in lieu of partition of real property, while "suspicious," was insufficient to warrant dismissal of case).

When analyzing whether a petition was filed in good faith, once a creditor makes a prima facie showing that a case was filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the Chapter 13 case was filed in good faith. *Alt v. U.S. (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002); *In re Scotto-Diclemente*, 459 B.R. 558, 562 (Bankr. D. N.J. 2011) (citing *Tamecki*, 229 F.3d at 207).

The Third Circuit has adopted the following factors when considering whether a Chapter 13 case should be dismissed or converted to one under Chapter 7 based on bad faith under 11 U.S.C. § 1307(c) :

(1) the nature of the debt;
(2) the timing of the petition;
(3) how the debt arose;
(4) the debtor's motive in filing the petition;
(5) how the debtor's actions affected creditors;
(6) the debtor's treatment of creditors both before and after the petition was filed; and
(7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Lilley,* 91 F.3d at 496 (citations omitted), *quoted in Myers*, 491 F.3d at 125. However, the Third

6

Case 1:16-bk-02789-RNO    Doc 90    Filed 02/21/17    Entered 02/21/17 11:02:23    Desc
Main Document    Page 6 of 11

Circuit also has made it clear that "no list is exhaustive of all the factors which could be relevant when analyzing a particular debtor's good faith." *15375 Mem'l Corp. v. Bejco, LP.* (*In re 15375 Mem'l Corp*), 589 F.3d 605, 618 n. 8 (3d Cir. 2009).

   *A. Nature of the debt*

Debtor's schedules indicated that he owes $417,305 to secured creditors, including a judgment in the amount of $241,103 that was entered on April 18, 2016; that he owes $5547.70 to priority unsecured creditors; and that he owes $49,784.23 to non-priority unsecured creditors.[5] No evidence was introduced that Debtor incurred substantial debt before he filed his petition or that extensive debts were incurred for gifts or luxury items. Hackerman's motion is centered on the treatment of his claim alone. Hackerman holds a contingent, unliquidated and disputed claim against Debtor in the amount of $500,000. He argues that his claim is based on Debtor's alleged "criminal" conduct in relation to the death of Hackerman's mare and her foal.[6] While Hackerman may regard Debtor's action or inaction as criminal, his claim against Debtor sounds in tort. Further, at this point, no determination has been made that a tort was committed. Even if Hackerman prevails on his claim, it is not conclusive on the issue of bad faith. *In re Caldwell*, 895 F.2d 1123, 1127 (6th Cir. 1990) ("It is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered.") Therefore, the nature of the debt included in the petition does not support a finding of bad faith.

---

[5]The judgment held by Richard and Annetta Long is secured by the assets of FDO Holdings, LLC., which includes two parcels of real estate in Franklin County, Pennyslvania.

[6]No criminal proceedings have been commenced in connection with Hackerman's claim.

*B. Timing of the petition and motive in filing the petition*

Hackerman argues that Debtor filed his bankruptcy petition in order to avoid liability on his claim. He states that Debtor planned to file for bankruptcy once he was notified that Hackerman intended to file a lawsuit against him. This assertion is not supported by the record. Hackerman's claim arose in the spring of 2012, four years before Debtor filed his bankruptcy petition. Debtor testified that he first discussed the possibility of filing a bankruptcy case with his attorney in April, 2016. Debtor first contacted bankruptcy counsel at the time a judgment was entered against FDO Holding, LLC and Debtor in Franklin County. This judgment, rather than Debtor's claim, along with mounting tax liabilities, precipitated the Chapter 13 filing. *See In re Zaver,* 520 B.R. 159, 167 (Bankr. M.D. Pa. 2014) (finding that even where a lawsuit causes a debtor to file for bankruptcy, other circumstances impacting debtor's affairs could evidence the debtor's intent to reorganize).

*C. Debtor's treatment of creditors*

Hackerman argues that creditors will receive a larger payout if Debtor's case is converted to one under Chapter 7 allowing the trustee to pursue a fraudulent conveyance action. This argument is premised on the assumption that the student loan paid with the proceeds of the refinancing benefitted Debtor's daughter rather than Debtor. The evidence at trial did not support this conclusion. Hackerman also asserts that because Debtor's daughter is a joint owner, she should be paying one half of the $877 monthly mortgage payment because she has a one-half interest in the Property. First, this conclusion is unmerited because Debtor's daughter does not reside in the Property. But even if she did, Debtor receives approximately $800 in rents monthly from his father and roommate that he does not share with his daughter. Thus, the rents received

8

Case 1:16-bk-02789-RNO    Doc 90    Filed 02/21/17    Entered 02/21/17 11:02:23    Desc
Main Document      Page 8 of 11

significantly offset the $877 monthly mortgage expense. Debtor's daughter would be entitled to share in the rents if she were required to contribute to payment of the mortgage.

Hackerman also argues that the one-half interest in the Property was transferred to Debtor's daughter fraudulently and that a Chapter 7 Trustee could pursue that claim under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"). Debtor testified that he transferred the Property into joint names to qualify for an equity loan to pay debts. Debtor's daughter was gainfully employed when the Property was refinanced and enabled him to qualify for the loan. Whether a Chapter 7 trustee would regard this conveyance as fraudulent and whether he would pursue an action is speculative. Because good cause for the transfer has been shown, I am not persuaded that it is more likely than not that a fraudulent conveyance action exists to be pursued by a trustee.

While Hackerman objects to Debtor's treatment of creditors, since the filing of the petition Debtor has pursued his plan in good faith. The Chapter 13 trustee withdrew his objection to Debtor's plan and has recommended that it be confirmed. Debtor is current on his mortgage payment as well as on his Chapter 13 plan payments. These factors weigh in favor of finding that Debtor filed his case with the intent to reorganize and to treat his creditors fairly.

*D. Whether Debtor has been forthcoming with the Bankruptcy Court and with creditors*

Hackerman argues that Debtor has not been candid with the Court by failing to describe the Property as a farm; by undervaluing his horses; by failing to report that his mortgage payments benefit an insider; and by failing to accurately report his income. Debtor testified that a more accurate description of the Property is "farmette" rather than a single family home. However, I do not find the characterization to be materially misleading. *In re Manfredi,* 434 B.R.

9

356, 362 (Bankr. M.D. Pa 2010) ("in the absence of any evidence to support that the omission . . . was more than an oversight, the omissions are not material to a determination of bad faith") (citing *In re Kerschner*, 246 B.R. 495, 499 (Bankr.M.D. Pa.2000)).

Debtor testified that he valued his horses based on their age, performance, and his experience. Hackerman did not present any evidence of a value different from that provided by Debtor. Therefore, there is no evidence to support the assertion that Debtor undervalued the horses. *See In re Zaver,* 520 B.R. at 167 (where no conclusive evidence of undervaluation was provided, the court concluded that the debtor had not misrepresented the value of his assets).

Debtor has argued that even though he transferred a one-half interest in the Property to his daughter, only he derives a benefit from the home and only he pays the mortgage. Furthermore, Debtor has indicated that he is willing to have the Property transferred back into his name only if the lender would agree.

Next, even though there was some confusion related to how Debtor's income was calculated, I disagree that Debtor was deceitful on his schedules with regard to his income. Debtor may have been unclear as to how bankruptcy schedules are generated, but his attorney was able to explain the process to the Court's satisfaction. Moreover, no evidence was provided that Debtor's reported income was materially inaccurate. Thus, I do not find that Debtor has concealed any property or assets or that he has not been candid with the Court or his creditors.

Hackerman raised sufficient issues surrounding the transfer of the real estate to shift the burden to Debtor to demonstrate that the case was filed in good faith. Considering all of the factors above, I find that Debtor has met this burden. One issue not addressed is Hackerman's allegation that Debtor does not have regular income with which to fund a Chapter 13 plan and

that Debtor is constantly borrowing funds from friends and family in order to meet his obligations. These allegations are particularly relevant to whether Debtor's plan has been filed in good faith. I will reserve ruling on this allegation until the confirmation hearing to be considered in connection with the feasibility of Debtor's proposed plan.

## IV. Conclusion

For the reasons set forth above, and after considering the totality of the circumstances, I find that Debtor has shown that his case was filed in good faith. I further find that the record supports a finding that the Chapter 13 plan was filed in good faith, I reserve a final determination on this latter issue, particularly in regard to Debtor's ability to fund the plan, until the hearing on confirmation. An Order denying the Motion will be entered.

By the Court,

*Mary D France*
Bankruptcy Judge
(VK)

Date: February 21, 2017