# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**IN RE:**

**DONALD LINWOOD DEMEZA**

|  |  |  |
|---|---|---|
| **Debtor(s)** | **Chapter:** | **13** |
| | **Case No.:** | **1-16-bk-02789 RNO** |
| | **Document No.:** | **123** |
| | **Nature of Proceeding:** | **Motion to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza** |

## OPINION[1]

A creditor in this Chapter 13 case moved to employ counsel and to be granted derivative standing to file an avoidance action. The Motion was opposed by the Chapter 13 Trustee and the Debtor. Additionally, the Debtor seeks sanctions against the creditor, including the award of attorney's fees. To the extent the Motion seeks to employ counsel, it is denied. To the extent the Motion seeks derivative standing it is denied. The Debtor's motion for the payment of attorney's fees by the creditor is also denied.

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1]    Drafted with the assistance of Maria Babajanian, Esq., Law Clerk

Case 1:16-bk-02789-RNO    Doc 160    Filed 03/01/18    Entered 03/01/18 10:23:56    Desc
Main Document      Page 1 of 23

## II.     FACTS AND PROCEDURAL HISTORY

Donald L. Demeza ("Demeza/Debtor") filed a voluntary Chapter 13 petition on July 5, 2016.  The case was originally assigned to The Honorable Mary D. France.  In light of Judge France's impending retirement, on February 26, 2017, the case was reassigned to me.

Pre-petition, Richard Hackerman ("Hackerman/Creditor") commenced two actions against Demeza/Debtor in the United States District Court for the Middle District of Pennsylvania.  Those civil actions were filed to Case Nos. 1:13-cv-02883-SES and 1:16-cv-01154-YK-SES ("Pre-Petition Actions").  The dockets for each of the Pre-Petition Actions indicate the matters are stayed pending resolution of this bankruptcy proceeding.

Hackerman/Creditor has an unliquidated damage claim against Demeza/Debtor.  Hackerman/Creditor has sought damages due to the death of his pregnant broodmare and her foal.  The broodmare and the foal were in Demeza/Debtor's possession at the time the foal was delivered.  Hackerman/Creditor alleges that Demeza/Debtor's negligence led to the euthanization of the broodmare and the foal.

Hackerman/Creditor filed a proof of claim in the amount of $500,000.00.  Demeza/Debtor objected to the proof of claim and that objection is pending.  The objection to the proof of claim is only one of several contested matters, as well as a pending adversary proceeding, between the two parties.  Previously, Judge France entered an order and opinion denying Hackerman/Creditor's motion to convert the case to a case under Chapter 7 of the Bankruptcy Code.  The conversion opinion is reported as *In re Demeza*, 567 B.R. 473 (Bankr. M.D.Pa. 2017).  Further, on February 23, 2017, Bankruptcy Judge France entered an amended order confirming the Chapter 13 plan, over the objections of Hackerman/Creditor.

2

Hackerman/Creditor timely appealed the denial of conversion to Chapter 7 and the entry of the order confirming the Chapter 13 plan. District Judge Caldwell affirmed the denial of the conversion motion, but reversed and remanded the confirmation order, directing the Bankruptcy Court to make additional findings concerning the "best interests of creditors test" codified in 11 U.S.C. § 1325(a)(4).[2] Judge Caldwell's opinion is reported as *Hackerman v. Demeza*, 576 B.R. 472 (M.D.Pa. 2017).

Hackerman/Creditor also commenced an adversary proceeding alleging that his claim against Demeza/Debtor should be determined to be non-dischargeable. The adversary proceeding is filed to Case No. 1:16-ap-00141 ("Non-Dischargeability Proceeding"). I wrote an opinion dismissing several of the counts in the Non-Dischargeability Proceeding. That opinion is reported as *In re Demeza*, 570 B.R. 33 (Bankr. M.D.Pa. 2017). A second amended complaint was filed, and answered in the Non-Dischargeability Proceeding. Trial is scheduled for May 25, 2018.

The Federal Rules of Evidence apply to bankruptcy proceedings before United States bankruptcy judges. *In re Il Nam Chang*, 539 B.R. 733, 736 (Bankr. M.D.Pa. 2015). Federal Rule of Evidence 201 provides that a Federal court can take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket events in a case and the contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 412 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 n.19 (Bankr. E.D.Pa. Jan. 11, 1991). I take judicial notice of the docket in this Chapter 13 case, as well as the docket in the Non-Dischargeability Proceeding, the dockets in the Pre-Petition Actions, and the District

---

[2]     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code" or "BAPCPA").

Court docket in the appeal from Judge France's order denying conversion and confirming the Chapter 13 plan. That appeal was assigned District Court Case No. 1:17-cv-00395-WWC. I specifically take judicial notice that Amended Schedule A/B Property lists Demeza/Debtor as the co-owner of real property known as 500 Ortanna Road, Ortanna, PA, 17353 ("Real Property").

## III. DISCUSSION

### A. Motion to Employ Counsel

Hackerman/Creditor filed a Motion to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ("Derivative Standing Motion"). ECF No. 123. In part, the Derivative Standing Motion seeks the employment of Hackerman/Creditor and requests that he be "reimbursed his expenses and paid professional fees pursuant to Section 503 of the Bankruptcy Code." Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza 10, ECF No. 123. The Court accepts Hackerman/Creditor's representations that he is a practicing attorney and maintains a law office in Baltimore, Maryland.

Unlike other chapters of the Bankruptcy Code, there is no statutory provision for the employment of professionals in a Chapter 13 case. Section 327 of the Bankruptcy Code addresses the employment of professional persons. Section 327(b) provides:

> **(b)** If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

Conspicuously absent from this provision is a provision authorizing employment of professional persons in a Chapter 13 proceeding. *In re Olick*, 565 B.R. 767, 789 (Bankr. E.D.Pa. 2017)

4

("Indeed, in every-day practice in the bankruptcy courts, no one expects chapter 13 debtors to request court appointment of their bankruptcy counsel and debtors never do so.").

I take judicial notice that, in this case, neither counsel for Demeza/Debtor nor counsel for the Chapter 13 Trustee moved for the approval of her or his employment. A starting point in determining Congressional intent in a statute is an examination of the existing statutory text. *Lamie v. U.S. Trustee*, 124 S.Ct. 1023, 1030 (2004). Further, when a statute's language is plain, the function of a court – at least where the disposition required by the text is not absurd – is to enforce the statute according to its terms. *Hartford Underwriters Ins. Co. v. Union Planner's Bank, N.A.*, 120 S.Ct. 1942, 1947 (2000).

A learned commentator discussing § 327 noted, "[t]hus, a debtor in a case under chapter 7 or **chapter 13** does not need court approval before retaining counsel." 3 Collier on Bankruptcy ¶ 327.01 at 327-5 (16th ed. 2017) (emphasis added). A number of reported cases have found that there is no requirement for the employment of a debtor's attorney in a Chapter 13 case. *In re Jones*, 505 B.R. 229, 233 (Bankr. E.D.Wisc. 2014) (no requirement for employment of special counsel by Chapter 13 debtor); *In re Gutierrez*, 309 B.R. 488, 501 (Bankr. W.D.Tex. 2004); *In re Young*, 285 B.R. 168, 170 (Bankr. D.Md. 2002).

My colleague, Judge John Thomas, recently considered a Chapter 13 debtor's application to employ a real estate agent. He denied the subject application to employ finding that he lacked the authority to grant such an application under § 327. He further found that an order employing such a professional would merely be an advisory opinion; which a Federal court has no authority to issue. *In re Roggio*, 577 B.R. 457, 458 (Bankr. M.D.Pa. 2017).

Hackerman/Creditor offers no statutory authority for his employment as a self-represented, unsecured creditor. I recognize there is authority in the Bankruptcy Code for a

5

Chapter 11 creditors' committee to employ legal counsel. 11 U.S.C. § 1103(a); *In re Buran*, 363 B.R. 358, 359 (Bankr. W.D.N.Y. 2007). However, § 1103 applies only to Chapter 11 reorganization cases. This is because § 103(g) provides that Chapter 11 provisions only apply to cases under such chapter. *In re Liberty Fibers Corp.*, 2007 WL 2471446, at *3 (Bankr. E.D.Tenn. Aug. 27, 2007). Clearly, § 1103 does not apply to this Chapter 13 case.

Based upon the above considerations, I will deny the Derivative Standing Motion to the extent it requests that the Court approve the employment of Hackerman/Creditor.

**B. Standards for Derivative Standing to Utilize Avoiding Powers**

The principal issue in this case is whether Hackerman/Creditor should be granted authority to utilize the Chapter 13 Trustee's avoiding powers. Such permissive authority from the court is referred to as derivative standing.

The archetypal case on derivative standing in the Third Circuit is *Official Committee of Unsecured Creditors of Cybergenics Corp., ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003). In this en banc decision, the Third Circuit considered an appeal from the district court's dismissal of the creditors' committee's complaint which sought to avoid an alleged fraudulent transfer. *Cybergenics*, unlike the case at bar, was decided under Chapter 11 of the Bankruptcy Code. The Third Circuit reasoned that the bankruptcy court's equitable powers include the authority to confer derivative standing upon a creditors' committee to bring a fraudulent transfer action. *Id.* at 568. The case holds that a creditors' committee may sue on behalf of a debtor, with the approval and supervision of the bankruptcy court, but only where the debtor-in-possession unreasonably fails to bring suit on the fraudulent transfer claim or where the trustee or debtor-in-possession consents to the grant of derivative standing.

6

My research does not show that the Third Circuit has actually decided whether derivative standing can be granted in a Chapter 13 case. In a Chapter 13 case, where a debtor sought derivative standing to pursue avoidance actions, a panel of the court noted "[b]ut we need not decide the question in this case because the specific circumstances do not warrant derivative standing even if it were available to Chapter 13 debtors." *In re Merritt*, _____ Fed.Appx. _____, 2017 WL 4350769, at *3 (3d Cir. Oct. 2, 2017); *also see In re Weyandt*, 544 Fed.Appx. 107, 110 (3d Cir. 2013) (the panel did not take a position on whether derivative standing might be appropriate in some Chapter 13 contexts).

A number of bankruptcy court decisions within the Third Circuit have found that derivative standing is available in a Chapter 13 case, subject to the satisfaction of several conditions. Judge Deller considered a Chapter 13 debtor's motion for derivative standing to exercise the trustee's avoiding powers in the case of *In re Stewart*, 473 B.R. 612 (Bankr. W.D.Pa. 2012), aff'd 2013 WL 4041963 (W.D.Pa. Aug. 8, 2013). The court concluded that derivative standing could be conferred if three conditions were met: "(i) the movant has alleged a colorable claim that would benefit the estate (ii) the trustee has unjustifiably refused to pursue the claim itself; and (iii) the movant has obtained permission from the bankruptcy court to initiate the action on behalf of the estate." *Id.* at 637. In *Stewart*, the bankruptcy court ultimately dismissed the debtors' complaint finding that they had failed to satisfy the necessary conditions for the grant of derivative standing.

In 2014, Judge Coleman decided *In re Skinner*, 519 B.R. 613 (Bankr. E.D.Pa. 2014) aff'd 532 B.R. 599 (E.D.Pa. 2015); aff'd 636 Fed.Appx. 868 (3d Cir. 2016). She refused to confer derivative standing upon the plaintiff, a creditor and the debtor's brother. Judge Coleman found

7

that there would be no benefit to the estate because the plaintiff's action, if successful, would "cause the divestiture of estate assets." *Id.* at 623.

Judge Chan considered a Chapter 13 creditor's motion for derivative standing in the case of *In re Rosenblum*, 545 B.R. 846 (Bankr. E.D.Pa. 2016). Judge Chan considered the same three conditions for the grant of derivative standing as set forth in *Stewart*. *Id.* at 863. Ultimately, *In re Rosenblum* concluded that the plaintiffs could proceed with their pending state court fraudulent transfer action and the court granted derivative standing to the plaintiffs to so proceed. *Id.* at 874-75.

### C. Is There a Colorable Claim for a Fraudulent Transfer?

Has Hackerman/Creditor pled a colorable fraudulent transfer claim? A colorable claim is a plausible claim that would survive a motion to dismiss brought under F.R.B.P. 7012(b)(6). *In re Rosenblum*, 545 B.R. at 863-64.

There is well-established jurisprudence as to what constitutes a plausible claim. "A plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *In re Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). In determining whether a plausible claim has been stated, the alleged facts should be viewed in the light most favorable to Hackerman/Creditor. In contrast, legal conclusions which are pled are not assumed to be correct in considering plausibility on a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In the Derivative Standing Motion, Hackerman/Creditor quotes a number of sections from the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5101, et seq. ("PUFTA"). A bankruptcy trustee may avoid a transfer that would be avoidable under state law

pursuant to § 544(b) of the Bankruptcy Code.  *In re Rosenblum*, 545 B.R. at 856-57; *In re Total Containment, Inc.*, 335 B.R. 589, 612 (Bankr. E.D.Pa. 2005).

The PUFTA allows for the avoidance of fraudulent transfers based upon three general conditions: (1) the creditor's claim arose before the transfer; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (3) the debtor became insolvent as a result of the transfer.  12 Pa.C.S.A. § 5105; *In re Wettach*, 811 F.3d. 99, 104 (3d Cir. 2016) (considering constructively fraudulent transfer claim); *Knoll v. Uku*, 154 A.3d 329, 333 (Pa. Super. 2017); *Gallaher v. Riddle*, 850 A.2d 748, 750 (Pa. Super. 2004).

The Derivative Standing Motion contains several factual allegations in support of the claim under the PUFTA.  First, that Hackerman/Creditor held a claim against Demeza/Debtor.  Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 2, ECF No. 123.  Further, paragraph 4 of the Derivative Standing Motion states, "Ashley Demeza, the daughter of Donald Demeza was gifted for no consideration an interest in Donald Demeza's real property located at 500 Orrtanna Road, Ortanna (hereinafter "the property") on February 5, 2013, as a joint tenant with rights of survivorship."  Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 4, ECF No. 123.  Attached as exhibit 5 to the Derivative Standing Motion is a copy of a deed for the Real Property dated February 5, 2013, from Demeza/Debtor to Demeza/Debtor and Ashley M. Demeza.  The deed recites that it is a transfer from father to father and daughter.  It says the transfer was for and in consideration of the sum of $1.00.  The Derivative Standing Motion further alleges that Ashley Demeza did not pay any consideration for the property transferred to her.  Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 5, ECF No. 123.

9

In arguing that there is not a colorable claim, Demeza/Debtor asserts that prior findings by Judges France and Caldwell constitute *res judicata*. Debtor's Mot. to Strike or Dismiss Richard J. Hackerman's Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza and Request for Payment of Attorneys' Fees 5, ECF No. 125. Demeza/Debtor refers to "Judge France's finding that there was <u>not</u> a fraudulent conveyance." *Id.* There is no citation to the record to support this purported finding. I note that Judge France's opinion denying the conversion of the case to Chapter 7 includes, "I am not persuaded that it is more likely than not that a fraudulent conveyance action exists to be pursued by a trustee." *In re Demeza*, 567 B.R. 473, 479 (Bankr. M.D.Pa. 2017). This language, in my view, does not express a finding that there was no fraudulent conveyance.

There are generally three necessary elements for *res judicata*, or claim preclusion. The required grounds for this defense are: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies, and (3) a subsequent suit based on the same causes of action. *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 276-77 (3d Cir. 2014); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259-60 (3d Cir. 2010). I cannot find that the grounds for *res judicata* are stated here. First, while Judge Caldwell affirmed many of Judge France's findings, he ultimately reversed the confirmation order and remanded it for additional findings. Thus, no final judgment was entered as to confirmation. *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1696 (2015) (denial of confirmation of a Chapter 13 plan is not a final order subject to immediate appeal). I acknowledge that Judge Caldwell did affirm the denial of the motion to convert this case to a case under Chapter 7. I maintain significant doubts that Judge Caldwell's conversion denial is a final judgment. In any event, the Derivative Standing Motion concerns different

Case 1:16-bk-02789-RNO    Doc 160    Filed 03/01/18    Entered 03/01/18 10:23:56    Desc
Main Document      Page 10 of 23

causes of action than those previously decided. Demeza/Debtor's defense of *res judicata* is overruled.

I conclude that Hackerman/Creditor has pled a colorable or plausible claim for the avoidance of the transfer of the one-half interest in the Real Property to Ashley Demeza pursuant to provisions of the PUFTA.

### D. Has the Trustee Unjustifiably Refused to Pursue a Fraudulent Transfer Claim?

I think it is important to say a word about the typical role of a Chapter 13 trustee, as compared to a Chapter 7 trustee. It has been the Court's experience that a Chapter 13 trustee generally serves more as a party in interest to be heard on the variety of issues that are a part of the Chapter 13 plan confirmation process. A Chapter 13 trustee also serves as a disbursing agent for monies paid into Chapter 13 plans. However, a Chapter 13 trustee does not have the power to sell property of the estate; that power resides in the Chapter 13 debtor. 11 U.S.C. § 1303; *In re McConnell*, 390 B.R. 170, 176-77 (Bankr. W.D.Pa. 2008). Thus, typically, a Chapter 13 trustee is less involved in the collection and liquidation of property of the estate than a Chapter 7 trustee would be. Further, a Chapter 13 trustee often lacks the resources to pursue meritorious avoidance claims. *In re Dickson*, 427 B.R. 399, 405 (6th Cir. B.A.P. 2010), aff'd 655 F.3d 585 (6th Cir. 2011); *In re Engle*, 496 B.R. 456, 463 (Bankr. S.D.Oh. 2013).

I cannot find that the "system broke down" in this case. Compare *Cybergenics Corp.* 330 F.3d 548, 568 (3d Cir. 2003). My review of the record shows that the Chapter 13 Trustee was actively engaged in this case, appearing and asking to be heard at many hearings. The Chapter 13 Trustee filed a brief in opposition to the Derivative Standing Motion (ECF No. 139) and a staff attorney for the Chapter 13 Trustee's office argued against the Derivative Standing Motion in court on February 7, 2018. A portion of the Chapter 13 Trustee's argument reads, ". . .

11

secondly, and maybe most importantly, whether or not this motion would actually benefit the estate as opposed to Mr. Hackerman himself." Trial Tr., 16, Feb. 7, 2018, ECF No. 153.

A Federal court should refrain from rendering advisory opinions. *In re Trichilo*, 540 B.R. 547, 551-52 (Bankr. M.D.Pa. 2015). I believe a corollary to not rendering advisory opinions is for a court not to decide more than is necessary to decide the subject dispute – the grant or denial of the Derivative Standing Motion.

In Section F, I conclude that the proposed fraudulent transfer action would not benefit the estate. I find this to be dispositive and, therefore, do not need to decide the question of whether the Chapter 13 Trustee justifiably refused to pursue a fraudulent transfer claim.

### E. Is There a Colorable Claim for Preferential Transfer?

Judge Caldwell's opinion includes this observation about Hackerman/Creditor's advocacy, "Hackerman has consistently conflated and comingled the alleged facts and legal issues underlying his numerous grievances with Demeza's bankruptcy filing." *Hackerman v. Demeza*, 576 B.R. 472, 483 (M.D.Pa. 2017).

The demand for relief in the Derivative Standing Motion refers to a "preferential transfer" action against Ashley Demeza. Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza 10, ECF No. 123. The Derivative Standing Motion does not plead the required elements for a preference claim, nor provide any legal support for such a claim. I do note the allegation that "from the proceeds of the mortgage they paid $22,500.00 for the Daughter's education loan." Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 6, ECF No. 123.

12

The required elements of a voidable preference claim are set forth in the Bankruptcy

Code. Specifically:

> **(b)** . . . the trustee may avoid any transfer of an interest of the debtor in property--
>
> **(1)** to or for the benefit of a creditor;
>
> **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> **(3)** made while the debtor was insolvent;
>
> **(4)** made--
>
> > **(A)** on or within 90 days before the date of the filing of the petition; or
> >
> > **(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> **(5)** that enables such creditor to receive more than such creditor would receive if--
>
> > **(A)** the case were a case under chapter 7 of this title;
> >
> > **(B)** the transfer had not been made; and
> >
> > **(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purposes of the preference rule include ensuring that creditors are

treated equitably and discouraging debtors from treating certain creditors preferentially and, in

turn, discouraging creditors from "racing to dismember the debtor" before a bankruptcy is filed.

*In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 219 (3d Cir. 1994); *In re Archway Cookies*,

435 B.R. 234, 241 (Bankr. D.Del. 2010).

Even if the student loan payment complained of was made within the preference time

period, which is not alleged, I do not find that a plausible preference claim has been pled. A

13

payment to a creditor of Demeza/Debtor's daughter is not a preference. Rather, we are concerned about payments to Demeza/Debtor's creditors during the applicable preference period. Further, as noted below, I have concluded that the mortgage loan is not subject to attack. Any payment on Ashley Demeza's student loan was from proceeds of the mortgage loan. I cannot find that this either preferred a creditor of *Demeza/Debtor* or that the payment depleted the bankruptcy estate. I conclude that no plausible preferential transfer claim has been asserted.

At other times, it appears that Hackerman/Creditor tries to characterize the payment on the student loan as a fraudulent transfer. This is not a plausible claim. If the transfer of the one-half interest in the Real Property to Ashley Demeza were avoided, then either her one-half interest, or the value thereof, would become property of the estate. 11 U.S.C. § 550(a). Further, there is only a single recovery for an avoided transfer. 11 U.S.C. § 550(d); *In re Phillips*, 379 B.R. 765, 780 (Bankr. N.D.Ill. 2007). I conclude that any relief which avoids the transfer of the Real Property *and* recovers payments made from the mortgage proceeds would be an impermissible dual recovery.

Again, it can be difficult to discern what Hackerman/Creditor is alleging. There is a reference to "preferential transfer action" in paragraph 8 of the Response to Demeza/Debtor's Motion to Strike. Resp. to Debtor's Mot. to Strike or Dismiss and for Payment of Att'ys' Fees ¶ 8, ECF No. 128. His language vacillates and makes reference to fraudulent transfer and preference claims as if they were interchangeable. In fact, these are quite different causes of action. In any event, I conclude that no colorable claim for avoidance of the student loan payment, as either a preferential or a fraudulent transfer has been alleged.

The Derivative Standing Motion also alleges that after the transfer to Ashley Demeza, a joint mortgage loan for $125,000.00, secured by the Real Property, was made. Mot. to Employ

14

Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 6, ECF No. 123. I do not read the Derivative Standing Motion as seeking avoidance of the joint mortgage granted by Ashley Demeza and Demeza/Debtor. However, because of the "comingling of issues," I will make some limited findings and conclusions concerning the mortgage. First, avoidance of transfers under the Bankruptcy Code is generally limited to recovery from the initial transferee. 11 U.S.C. § 550(a); *In re Direct Response Media, Inc.*, 466 B.R. 626, 654 (Bankr. D.Del. 2012). Similarly, the PUFTA protects subsequent transferees:

> **(a) Certain transfers or obligations not voidable.--**A transfer or obligation is not voidable under section 5104(a)(1) (relating to transfer or obligation voidable as to present or future creditor) against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee.

12 Pa.C.S.A. § 5108(a).

Nothing has been pled to allege that the mortgagee who made the loan against the Real Property did not do so in good faith. Neither is it alleged that the mortgage was taken for less than reasonably equivalent value. A transaction is not voidable under the PUFTA if a transferee demonstrates that (1) he took in good faith and (2) for a reasonably equivalent value. *Carroll v. Stettler*, 941 F.Supp.2d 572, 579 (E.D. Pa. 2013).

Hackerman/Creditor also complains about Demeza/Debtor paying the mortgage on the Real Property when his daughter, Ashley, is a one-half owner. Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza ¶ 8, ECF No. 123. There may have been an issue as to whether paying one-half of the mortgage payments constituted a reasonable and necessary expense for the purpose of the calculation of projected disposable income. 11 U.S.C. § 1325(b); *see Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 721-22 (2011). However, I find that the amended confirmation order entered by Judge France on

15

February 23, 2017, at ECF No. 94, effectively disposed of this issue. The amended confirmation order was affirmed by Judge Caldwell in all respects, except that he remanded for findings on the best interests of creditors test codified in § 1325(a)(4). *See Hackerman v. Demeza*, 576 B.R. 472, 483-84 (M.D.Pa. 2017).

Generally, confirmation of a Chapter 13 plan binds the debtor and his creditors to the provision of the plan. 11 U.S.C. § 1327; *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686, 1692 (2015); *In re Caruso*, 433 B.R. 135, 138 (Bankr. M.D.Pa. 2010).

I conclude that Hackerman/Creditor's complaints about any payments Demeza/Debtor makes on the mortgage against the Real Property are barred and do not constitute a colorable claim. This reasoning supports my earlier finding that no plausible claim for avoidance of the mortgage payments has been raised.

### F. Would the Proposed Fraudulent Transfer Claim Benefit the Estate?

How am I to determine if Hackerman/Creditor's claim under the PUFTA would benefit the estate? I find this issue requires that I perform a cost benefit analysis of the proposed action. Merely for purposes of this analysis, I will assume that the PUFTA action would be successful in avoiding the transfer of a one-half interest in the Real Property to Ashley Demeza. However, this is only an assumption. Any assumptions contained in this analysis are not intended as final conclusions, or as law of the case.

Additionally, I will assume that there would be a cost to the estate if Hackerman/Creditor pursues the PUFTA action. I assume that it is likely that, after a successful action, he would seek allowance of reasonable attorney's fees and the reimbursement of expenses pursuant to § 503(b). *In re Dzierzawski*, 518 B.R. 415, 422 (Bankr. E.D.Mich. 2014). In point of fact, Hackerman/Creditor requested such compensation and reimbursement in the wherefore clause of

16

the Derivative Standing Motion.  Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza 10, ECF No. 123.

When determining a reasonable amount of attorney's fees, bankruptcy courts should look to the market rates for professional services, whether provided by an attorney or a paralegal.  *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 854 (3d Cir. 1994).  Further, the calculation used most frequently by courts to determine reasonable compensation is the number of hours multiplied by the hourly rate.  *In re Smith*, 331 B.R. 622, 628 (Bankr. M.D.Pa. 2005).  For purposes of a cost benefit analysis, I will assume that Hackerman/Creditor would expend at least eighty hours on a contested fraudulent transfer avoidance action.  Further, based upon my review of many Chapter 13 applications for compensation, I will assume an attorney's hourly rate of $275.00.  Thus, my cost benefit analysis will deduct the sum of $22,000.00 from any assumed potential recovery.  This deduction is required because § 503 administrative claims are priority claims which are paid before general unsecured claims.  11 U.S.C. § 507(a)(2); *In re 710 Long Ridge Road Operating Company, II, LLC*, 505 B.R. 163, 173 (Bankr. D.N.J. 2014); *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 68 (Bankr. S.D.N.Y. 2004).

My cost benefit analysis will include two scenarios.  In scenario one, I will assume that Ashley Demeza's one-half interest is successfully avoided.  In scenario two, I will assume that she remains a one-half owner of the Real Property.

I will also assume that the mortgage against the Real Property will remain in place, notwithstanding any avoidance of the transfer of the one-half interest to Ashley Demeza.  For purposes of this analysis, I take judicial notice that Schedule A/B lists Demeza/Debtor as a co-owner of the Real Property.  The Real Property is scheduled with a value of $160,000.00, with Demeza/Debtor's interest valued at $80,000.00.  The mortgagee, U.S. Bank, N.A., filed Proof of

17

Claim No. 6-1 evidencing a secured claim against the Real Property in the amount of $117,979.27. A properly filed proof of claim is prima facie evidence as to the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Sacko*, 394 B.R. 90, 98 (Bankr. E.D.Pa. 2008).

Scenario One (with avoidance recovery):

| | |
|---|---:|
| Real Property Scheduled Value | $160,000.00 |
| Mortgage | - $117,979.00 |
| Subtotal | $42,020.00 |
| Priority Tax Claims | - $5,799.00 |
| Subtotal | $36,222.00 |
| Estimated Professional Fees | - $22,000.00 |
| Subtotal | $14,222.00 |
| Total Filed Unsecured Claims | ÷ $509,997.26 |
| Pro Rata Distribution for Unsecured Creditors | 2.8% |

Scenario Two (without avoidance recovery):

| | |
|---|---:|
| Real Property Scheduled Value | $160,000.00 |
| Mortgage | - $117,979.00 |
| Subtotal | $42,020.00 |
| Debtor's One-Half Interest (÷ 2) | $21,010.00 |
| Priority Tax Claims | - $5,799.00 |
| Subtotal | $15,211.00 |
| Total Filed Unsecured Claims | ÷ $509,997.26 |
| Pro Rata Distribution for Unsecured Creditors | 3.0% |

The cost benefit analysis shows a slightly smaller distribution to unsecured creditors after a "successful" fraudulent transfer action. Further, it should be noted that pursuing a fraudulent transfer action is quite likely to delay the Chapter 13 proceeding; creditors whose payments are delayed will presumably suffer a loss based upon the time value of money. *Till v. SCS Credit Corp.*, 124 S.Ct. 1951, 1966 (2004) ("$4,000 today is worth more than $4,000 to be received 17 months from today because if received today, the $4,000 can be invested to start earning interest immediately.").

This cost benefit analysis leads me to conclude that there is no benefit to the estate in pursuing the fraudulent transfer claim. Any increase in the net value of the Real Property is offset by the projected professional fees. It is not appropriate to approve of derivative standing for a creditor to undertake an action which only benefits him, rather than all of the unsecured creditors. *See Skinner*, 519 B.R. 613, 623 (Bankr. E.D.Pa. 2014) (derivative standing not approved to bring action which would divest estate assets and not benefit the estate).

Rather surprisingly, to date, Demeza/Debtor has not claimed any exemption in the Real Property. I note that when this case was filed, there was an available residential real estate exemption for up to $23,675.00. 11 U.S.C. § 522(d)(1); *In re Luckham*, 464 B.R. 67, 72 (Bankr. D.Mass. 2012) (decided under 2011 version of the Bankruptcy Code). An exemption claim for Demeza/Debtor's interest in the Real Property could significantly impact any potential distribution to unsecured creditors. If a debtor invokes an exemption to which he is entitled, a bankruptcy court may not refuse to honor the exemption, absent a valid statutory basis for doing so. *Law v. Siegel*, 134 S.Ct. 1188, 1196 (2014).

I conclude that the fraudulent transfer claim proposed by Hackerman/Creditor would not benefit the bankruptcy estate. Since this is a required element for the grant of derivative standing, the Derivative Standing Motion must be denied. Thus, my Order will deny the Derivative Standing Motion.

### G. Has Hackerman/Creditor Engaged in Vexatious Conduct Justifying Sanctions Under 28 U.S.C. § 1927 or § 105 of the Bankruptcy Code?

Demeza/Debtor responded to the Derivative Standing Motion by filing Debtor's Motion to Strike or Dismiss Richard J. Hackerman's Motion to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza and Request for Payment of Attorneys' Fees ("Motion to Strike"). ECF No. 125. The Motion to Strike, in part, requests that

Hackerman/Creditor be sanctioned and directed to pay to Demeza/Debtor's counsel the sum of $50,000.00 for "unreasonable and vexatious filing of the current motion and previous motions and pleadings." Debtor's Mot. to Strike or Dismiss Richard J. Hackerman's Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza and Request for Payment of Att'ys' Fees 8, ECF No. 125. Demeza/Debtor's Motion to Strike maintains that sanctions are authorized pursuant to 28 U.S.C. § 1927 and § 105 of the Bankruptcy Code.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Third Circuit has held that to impose 11 U.S.C. § 1927 sanctions, a court must "find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008); *also see In re Aleckna*, 494 B.R. 647, 653 (Bankr. M.D.Pa. 2013). Further, before attorneys' fees and costs may be taxed under 11 U.S.C. § 1927, there must be a finding of willful bad faith on the part of the offending attorney. *Baker Industries, Inc. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985). I find that the above standard by no means requires that an attorney must demonstrate uniform success in conducting the subject litigation. Indications of bad faith include findings that the claims advanced were meritless, that counsel knew or should have known this, and that there was an improper motive for filing a suit, such as for purposes of harassment. *In re Prudential Ins. Co. America Sales Practice Litigation Agent*

*Actions*, 278 F.3d 175, 188 (3d Cir. 2002); *Ferguson v. Valero Energy Corp.*, 454 Fed.Appx. 109, 110 (3d Cir. 2011).

Demeza/Debtor argues that Hackerman/Creditor has filed "numerous, duplicative, unwarranted and inflammatory submissions . . . ." Debtor's Mot. to Strike or Dismiss Richard J. Hackerman's Mot. to Employ Counsel to Pursue Fraudulent Conveyance Action and Preference Action against Ashley Demeza and Request for Payment of Att'ys' Fees 8, ECF No. 125. No specific examples of such reported filings were offered in Demeza/Debtor's Motion to Strike, or at argument. I also note that the Chapter 13 Trustee's brief in opposition to the Derivative Standing Motion does not address Demeza/Debtor's request for sanctions against Hackerman/Creditor. I therefore assume that the Chapter 13 Trustee takes no position with respect to this requested relief.

Unquestionably, Hackerman/Creditor has been tenacious in pursuing his claim against Demeza/Debtor. The Facts and Procedural History in Section II of this Opinion provide context, including reference to the Pre-Petition Actions and the Non-Dischargeability Proceeding. However, as noted above, the litigation has not been entirely one-sided. For example, Demeza/Debtor has objected to Hackerman/Creditor's proof of claim.

I acknowledge Demeza/Debtor's point that the original complaint in the Non-Dischargeability Proceeding cited Bankruptcy Code provisions, such as § 727, which have no applicability in a Chapter 13 case. These points were made in a motion to dismiss. On April 6, 2017, a judgment was entered dismissing five counts of the seven-count complaint, with prejudice. Thereafter, Hackerman/Creditor filed a second amended complaint in the Non-Dischargeability Proceeding containing only two counts. The first count sounded under § 523(a)(2), the fraud exception, and the second count under § 523(a)(4), the fiduciary exception.

21

It is significant to me that both of these Bankruptcy Code sections do apply in Chapter 13 cases. After consideration of another motion to dismiss filed by Demeza/Debtor, I entered a judgment dismissing count two, with prejudice. Thus, count one is the sole remaining count in the Non-Dischargeability Proceeding.

It bears repeating that I do not question Demeza/Debtor's position that Hackerman/ Creditor has aggressively pursued his claim. However, Hackerman/Creditor's willingness and ability to revise his positions, in accordance with the Court's decisions, is not the intransigence which courts might note in finding that a litigant engaged in vexatious conduct. To be sure, not all of Hackerman/Creditor's legal gambits in the case have been successful. Neither have his actions all been unsuccessful. As noted in the Procedural History, Section II, his motion to convert the case to case under Chapter 7 was denied and the denial was affirmed by the District Court. Hackerman/Creditor's objections to confirmation were denied by Bankruptcy Judge France. However, on appeal, the District Court vacated the confirmation order and remanded for further findings on the best interests of creditors test.

I easily find that Hackerman/Creditor has aggressively pursued his claim against Demeza/Debtor. I cannot find that he has proceeded in bad faith or that his actions have been unreasonable or vexatious. I, therefore, conclude that sanctions and an award of attorneys' fees under 28 U.S.C. § 1927 are unwarranted.

Alternatively, Demeza/Debtor requests sanctions citing § 105 of the Bankruptcy Code. Under § 105, a bankruptcy court has authority to take necessary actions to enforce or implement court orders or rules or to prevent an abuse of process. Further, a Federal court has the inherent power to sanction parties because of either improper conduct before the court or disobeying orders of the court. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 107 S.Ct. 2124, 2132 (1987); *In re*

*Protarga, Inc.*, 329 B.R. 451, 479 (Bankr. D.Del. 2005) (bankruptcy courts have inherent power to enforce compliance with and execution of their lawful orders); *also see In re Continental Airlines, Inc.*, 236 B.R. 318, 330 (Bankr. D.Del. 1999) aff'd 279 F.3d 226 (3d Cir. 2002) (pilots who brought state court action sanctioned for violation of Chapter 11 confirmation order).

Demeza/Debtor has raised rather general complaints as to the pleadings and other documents filed by Hackerman/Creditor. Demeza/Debtor has failed to identify any order of this Court which Hackerman/Creditor has violated.

I conclude that the request for sanctions and an award of attorneys' fees against Hackerman/Creditor is not justified under § 105. My Order will deny such relief under 28 U.S.C. § 1927 or under § 105.

## IV. CONCLUSION

Based upon the above, I will sustain in part and overrule in part Demeza/Debtor's and the Chapter 13 Trustee's objections consistent with the foregoing reasoning. I will deny the Derivative Standing Motion. I will also deny Demeza/Debtor's motion for sanctions and the imposition of attorney's fees.

By the Court,

Robert N. Opel, II, Chief Bankruptcy Judge (BI)

March 1, 2018